**In re EMPIRE PIPE AND DEVELOPMENT, INC., Debtor.**

**Lauren JOHNSON, Trustee, Plaintiff,**

v.

**SMITH BROTHERS OIL COMPANY INC., Defendant.**

**Bankruptcy No. 90–2874–8P7.**
**Adv. No. 92–070.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 6, 1993.

Dennis J. LeVine, Tampa, FL, for plaintiff.

Larry M. Foyle, Tampa, FL, for defendant.

## ORDER ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding commenced by Lauren Johnson (Trustee), Trustee in Bankruptcy for Empire Pipe and Development, Inc. (Debtor), against Smith Brothers Oil Company, Inc. (Smith Brothers). The Trustee, in her Complaint, seeks avoidance of several payments made by the Debtor as preferential transfers to Smith Brothers. The matter presently under consideration is a Motion For Summary Judgment filed by the Trustee. In the Motion, the Trustee contends that there are no genuine issues of material facts and she is entitled to the recovery of those payments as voidable preferences pursuant to § 547(b) of the Bankruptcy Code. Both the Trustee and Smith Brothers agree that there are no genuine issues of material fact and, therefore, this Court may resolve the controversy as a matter of law. The Court has considered the Motion, together with the pertinent part of the record, and finds the following facts are indeed without dispute:

At the time relevant, the Debtor operated a building supply business in the State of Florida. Smith Brothers is a petroleum products distributor, and sold petroleum products to the Debtor on an open account basis. On March 29, 1990, the Debtor filed its voluntary Chapter 11 Petition for Relief under the Bankruptcy Code. On March 6, 1991, the Chapter 11 case was converted to a Chapter 7 case and Lauren Johnson was appointed Trustee.

In the ninety days preceding the filing of this case, the Debtor made a total of $35,125.50 in payments to Smith Brothers. In the same period of time, Smith Brothers shipped $22,432.06 worth of goods to the Debtor. The Trustee seeks to avoid the payments made to Smith Brothers as preference payments pursuant to § 547 of the Bankruptcy Code, which provides, in pertinent part, as follows:

§ 547. Preferences

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or an account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made.—

(A) on or within ninety days before the date of the filing of the petition; or

(B) between ninety days and one year before the filing of the petition, if such creditor at the time of the such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made;

(C) such creditor received payment of such debt to the extent provided by the provision of this title.

■ On August 12, 1992, the Plaintiff filed a Motion for Summary Judgment. The Trustee contends that because she has established all the necessary elements of a voidable preference required by § 547, she is entitled to recover those payments made during the 90–day preferential period. In opposition to the Trustee's Motion, Smith Brothers has raised two defenses. First, Smith Brothers contends that the payments were made during the ordinary course of business, and is entitled to raise a defense under 11 U.S.C. Section 547(c)(2). Second, Smith Brothers contends that it supplied goods to the Debtor during the ninety day preference period, and is entitled to the "new value" defense under 11 U.S.C. Section 547(c)(4) and receive credit for the new value furnished. It is without serious dispute, and this Court is satisfied based upon this record, that the Trustee did establish all the necessary elements of a voidable preferential transfer required by § 547 of the Bankruptcy Code. Concerning the defenses asserted by Smith Brothers, it should be noted at the outset that there is no question that it is the burden of the Defendant to establish any exception to a voidable preference. *In the Matter of Sims Office Supply,* 94 B.R. 744 (M.D.Fla. 1988).

■ The first defense raised by Smith Brothers is based on § 547(c)(2)(B), claiming that these payments were made by the Debtor to Smith Brothers in the ordinary course of business. To establish this defense, the Defendant must show that the transactions during the preference period occurred in the same or ordinary manner as before the ninety day preference period; that is, the payments were made for a debt which was incurred by the Debtor in the ordinary course of business of its financial affairs and the transferee, § 547(c)(2)(A); that it was made in the ordinary course of business or financial affairs of the Debtor and transferee; § 547(c)(2)(B); and it was made according to the ordinary business terms, § 547(c)(2)(C). *In re Craig Oil Co.,* 785 F.2d 1563 (11th Cir.1986). To make this determination, this Court must consider the prior course of dealings between the parties, the amount of the payments, the timing of the payments, and the circumstances surrounding the payments.

Considering this defense, Courts developed what is known as the "vertical or horizontal" test. Under the vertical test, the Court will consider the usual pattern of dealings between the debtor and the creditor and even if the payments were not made pursuant to the requirements of the invoices submitted, i.e., when payment became due, it still would be accepted as a payment in the ordinary course of business if such payments were generally always past the due date over the years and there was no radical change in the method of collection. *In re Johns Manville Corp.,* 60 B.R. 612 (Bankr.S.D.N.Y.1986). Under the horizontal test, Courts which adopted the same considered the method of transactions between creditors and debtors in the same or similar industry.

■ This Court is satisfied that the application of the vertical test is more appropriate in the present instance simply be-

cause there is no evidence in this record to establish the normal method of payments in the industry. It is now conceded by counsel for Smith Brothers that the payments during the 90 days were not made in the same manner as prior to that period. The record clearly shows that payments during this period were late, different collection methods used by the Creditor, e.g., cashier's checks demanded instead of the normal checks drawn on the Debtor's bank, and credit limits lowered. Based on the foregoing, this Court is satisfied that the Smith Brothers' defense that these payments were made in the ordinary course of business is without merit and should be rejected.

■ This leaves for consideration the next defense raised by the Defendant which is the "new value" defense provided by § 547(c)(4). This section provides:

§ 547(c)(4). Preferences.

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

To successfully assert such a defense, Smith Brothers must prove by a preponderance of the evidence that:

1—the creditor extended new value after receiving the challenged payment;

2—the new value must have been unsecured; and

3—the new value must remain unpaid.

*In re Jet Florida System, Inc.*, 841 F.2d 1082 (11th Cir.1988). The Trustee contends that § 547(c)(4) is not available to the Defendant as a defense in any instance in which the creditor's new value has been repaid by the Debtor. This new value, otherwise known as a subsequent advance, may be used as a defense to offset preferences payments, but only if the new value remains unpaid. Preference payments, the shipment of goods, if any, are viewed as discrete transactions and not netted out for the entire ninety day preference period. In essence, a creditor is entitled to a set-off against any preference payment if goods were shipped and not paid for in the next payment transfer. *In re Jolly "N", Inc.*, 122 B.R. 897 (Bankr.D.N.J.1991). This set-off method supports the underlying policy of consideration of § 547(c)(4) which is to encourage trade creditors to continue to deal with troubled businesses. *In re New York City Shoes, Inc.*, 880 F.2d 679, 680 (3rd Cir.1989).

[5] Smith Brothers contends that new value need not remain unpaid as long as the estate is not depleted. *In re Check Reporting Services, Inc.*, 140 B.R. 425, 22 B.C.D. 1568 (Bankr.W.D.Mich.1992); *In re IRFM, Inc.*, 144 B.R. 886 (Bankr.C.D.Cal. 1992). In essence, Smith Brothers urges an application of the "net result" rule. *See In re Rustia*, 20 B.R. 131 (Bankr.S.D.N.Y. 1982); *4 Collier On Bankruptcy*, § 547.12, at 547–58 (15th ed. 1987). Under this rule, only the creditor's improved position resulting from payments greater than the actual shipment of goods to a debtor during the ninety day preference period is considered a voidable preference. *Collier* at 547–58. The net result is no longer viable as a rule for determining preferential transfers. *In re Fulghum Construction Corporation*, 706 F.2d 171 (6th Cir.1983), *cert. denied* 464 U.S. 935; 104 S.Ct. 342, 78 L.Ed.2d 310 (1983).

■ Having considered the authorities which are most persuasive to this Court, *Jet Florida System Inc.*, and *Jolly "N", Inc.*, *supra*, this Court is satisfied that a creditor who received preferential payments cannot get credit for any new value, i.e., additional goods shipped on credit unless the shipment remains unpaid. This, in turn, requires an analysis of the transactions between the parties during the relevant time period which analysis reveals the following:

The record reveals and it is without dispute that during the ninety day preference period, the Debtor made the following pay-

ments to Smith Brothers, and received the following shipments of petroleum from Smith Brothers:

| Ck Date | Ck Amount | Goods Shipped |
|---------|-----------|---------------|
| 1/8/90 | $1,500.00 | $3,971.79 |
| 1/16/90 | 9,721.36 | 9,252.23 |
| 2/5/90 | 1,500.00 | 461.31 |
| 2/9/90 | 5,155.17 | 3,142.53 |
| 2/21/90 | 2,248.97 | 340.42 |
| 2/23/90 | 2,000.00 | 2,431.78 |
| 3/1/90 | 2,500.00 | 2,832.00 |
| 3/21/90 | 8,000.00 | |
| 3/21/90 | 2,500.00 | |

██ This Court is constrained to reject the proposition urged by counsel for Smith Brothers that the preferential payments following the receipt of the new value should be netted out against the new value which, in fact, is nothing more than a restatement of the net result which had been rejected uniformly by the Court. Thus, it is clear that under the current law each transfer is a discreet event and must be examined independently against each subsequent extension of new value. In the last analysis, the test is to what extent the estate had been replenished by the new value. *See, In re Rustia,* and *In re Jolly "N", Inc., supra.*

Based upon the foregoing, the Court is satisfied that of the nine payments, totalling $35,125.50, $26,479.71 represent voidable preferences.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Motion for Summary Judgment filed by the Trustee be, and the same is hereby, granted. Smith Brothers is directed to remit to the Trustee $26,479.71 as voided preferential payments within 30 days from the date of this Order.

DONE AND ORDERED.